Your Honor, may it please the Court, Counsel, together with my co-counsel Grant Gierke, we're here representing the Plaintiff Appellant, Cora and Main, Limited Liability Partnership. Grant and I are honored to have our clients here, specifically Wade Bomberger, the District Sales Director, are both present here because this is a matter of importance to Cora and Main. $1.8 million is what Mr. McCabe sold his interest in Minnesota Pipe, excuse me, for to Cora and Main. He sold his ownership interest in Minnesota Pipe, including the customer goodwill, the customer lists, and all of the other assets of Cora and Main, excuse me, of Minnesota Pipe. The purchase agreement and the scope of its integration clause dealt with one subject, the sale of Minnesota Pipe to purchaser Cora and Main. Indeed, some of the shareholders simply took their funds and went on to other pursuits. They did not continue on in the business or with Cora and Main as salespersons. Not so with Defendant Ron McCabe. McCabe wanted to continue working with many of the same customers he had had at Minnesota Pipe, but as a non-owner employee of Cora and Main. As a result, he signed, separate and apart from the purchase agreement, an employment agreement, which had separate consideration, was paid separately, had employment as one of the parts of consideration, in addition to monetary consideration, and specifically had conditions precedent that make very clear that the purchase of Minnesota Pipe came first, and the employment of Mr. McCabe came second. Specifically, Appellant's Index, page 33, we talk about the contingent... You're talking effective dates or dates of signing? The dates of signing of the employment agreement, Your Honor, were October 2 and October 5. We're talking about the effective date with regard to these. The effective dates were, in fact, October 10 was the last date upon which the last conditions precedent were met. Those conditions precedent dealt with employment background issues such as I-9s, things like that. The sale went through on October 6, and then there was an opportunity for this agreement to become effective after that. Before we get too deep into your argument, I have sort of a preliminary matter. As I understand it, the court dismissed all of your counts except a breach of loyalty? Yes. And you moved for a voluntary dismissal without prejudice, which was granted? Yes. I don't know if you've seen, but we've had cases where we've raised that as a concern, at least in terms of sort of getting around our normal final order rule for jurisdiction in this court. And as I looked at it, it seemed there were two remedies. One was for you to abandon that completely, and the other is potentially for us to reverse and say that it was an abuse of discretion to grant that motion. Well, I think what we did was we filed a notice under Rule 41 to dismiss without prejudice. Judge Wright acted expeditiously on that request, dismissed without prejudice, and then entered judgment. I was going to put the question a different way. Would you rather have us amend the dismissal to be with prejudice, or dismiss this appeal for lack of jurisdiction? Judge, I would- We have done both. Judge, I would want to confer with my client about that issue. I think that has to be- Well, you don't get time to do that. Unless you're willing to accept dismissal with prejudice, then you have manufactured final order, and we have no jurisdiction as of right now. Okay. I'm going to suggest to my client, and I've taken five minutes of rebuttal, and again, I have my client here. I'm going to suggest the course of action that the breach of duty of loyalty claim be dismissed with prejudice with regard to that, which would then create or eliminate any potential issues with regard to jurisdiction. So, in your honor, Judge Loken, you were one of the people on the per curiam panel with regard to the Dingsey case. And Dingsey is really where we would be going first with regard to the integration clause, which is the crux issue with regard to the breach of contract case or claim and the tortious interference claims. Specifically, Dingsey holds, consistent with Swerkovitz v. Surima, that a court may only dismiss if it is clear that there could not be any conceivable facts proven consistent with the allegations. That's the only time you can dismiss under 12b-6, according to Dingsey, according to Surima, with regard to this case. In our particular case, we have an offer and an acceptance. We have independent consideration pursuant to new employment, as well as a monetary payment. We have performance under the contract for approximately three and a half years, from October of 2017 to just before June of 2021. We have alleged in the complaint breach of that agreement with regard to solicitation of customers after he left employment. As a result of that, consistent with Dingsey, consistent with Surima, we believe that we've made allegations that are consistent and that survive a 12b-6 motion. Well, except I understand the distinction in the briefs that you're making with respect to the different purposes and etc. Right. And your opposing counsel says you didn't plead that. We plausibly plead that. In which case, you know, all the argument in the world. I think we have pled that. We've pled specifically that in fact. What specific paragraphs in the complaint, which I have not studied, adequately plead the distinctions that you argue as the restatement provisions on integration clauses? Well, first of all, the plaintiff has, and we have agreed that the purchase agreement, as well as the employment agreement, are incorporated into the complaint. So those documents are in there in addition to the contract. We specifically talk about in the complaint, in the paragraphs, the sale of the business as a result of Mr. McCabe selling his interest in the business to Corn Main as a result. We then talk about how he violated the employment agreement with regard to this. So I think we've very clearly stated, both by incorporation of the agreement for purchase and the employment agreement, the business interest with regard to this. I don't think there's any doubt that we've talked about the fact that, in fact, the plaintiff is using the information he gained from three and a half years of employment with Corn Main to go out and solicit other customers. I would go further and say that the complaint is verified by Wade Bomberger, who's also present here, and that's consistent with under oath allegations with regard to that. So I think that those are consistent. And then I would add, Judge, the fact that Judge Wright indicated that she was going to evaluate this complaint under Iqbal and under Twombly with regard to this. And that's not the standard in Minnesota State District Court. And according to the Walsh versus U.S. Bank case, and according to the case from the Minnesota Supreme Court in 2021, Iqbal and Twombly are not the standard for review in state court. My point being, and we've argued this to Judge Wright as well as to you, to your honors. What A circuit or U.S. Supreme Court case says that Iqbal and Twombly don't apply if state law doesn't like them? I agree with that. But my point was this. If the court believed that we were not complying with Iqbal and Twombly, if we weren't complying with that, even though this case started out in state district court, then we should have had the opportunity to amend the complaint with regard to that. Pardon me? The combination of the District of Minnesota and the A circuit case law on that is that you have to make a motion, you have to attach a timely motion with your amended pleading attached. And as I understand it, you simply put at the end of your papers to the district court, oh, and if you don't agree with us on this issue, let us amend, which we have held many times, does not get it done. Well, we believe that we were, bluntly, we believe that we were in compliance with the requirements under Twombly and under Iqbal. And we believe very strongly that we're in compliance with the allegations with regard to Dingsey. That was my question. Right. I'm focusing on the restatement provision regarding how you decide the applicability of an integration clause. Well, I would... It has multiple factors. And are there paragraphs in the complaint you would refer me to that you pled that this is, did you even refer to the integration clause in the complaint? The integration clause for both documents are incorporated by copy of the... I know they're there. Pardon me? I know they're there, but... Right. You have to... Well, Judge, I would say this. I would refer you to the case that we cited from Missouri. First of all, the Missouri law is supposed to govern with regard to interpretation of the integration clause with regard to the purchase agreement. And the case involving... which is cited at page 31 of our brief, talks about the fact that Missouri courts have recognized the distinction between covenants ancillary to the sale of business and covenants merely ancillary to an employment contract. Counsel, the integration clause doesn't even operate by its own terms except as to other agreements pertaining to the subject matter. So isn't that really the key issue here? Judge, could I ask you to state that question again? I'm not sure I'm following. Sure. Well, the merger clause by its own terms... Which one? In the prior agreement. Okay. It says pertaining to the subject matter of latter agreements. So in other words, if they don't pertain to the same subject matter, there is no merger. That's right. That's exactly right. And with regard to that, the subject matter of that agreement was the purchase of the assets of Minnesota Pipe. It was not the future employment of Defendant Ron McCabe. The court's exactly right. Judge, I have a minute and 45 and I told the court deputy that I would reserve my time, the balance of my time. So I'm going to reserve, I guess, my minute and 36 as rebuttal. Thank you. Thank you. Thank you, Your Honors. My name is Sam Deal of the Crosscastle Law Firm on behalf of Appalese, Ron McCabe, and Dakota Supply Group, Incorporated. May it please the court. Appellant Cornmaine's argument ignores the plain language of the integrated non-competition agreement. I think there was some confusion during the previous argument in which there was a reference to the purchase agreement as opposed to the non-competition agreement. The purchase agreement has never been part of the record in this case and is not part of the record before this court. The issue Your Honor touched on at the end is the issue that is the most important issue in this case. What is the subject matter of the non-competition agreement and what is the effect of the plain language of the later adopted non-competition agreement on the earlier signed employment agreement? The subject, the parties actually agree on the subject of the agreement. Page 36 of Appellant's brief discusses whether the subject, alleges that the subject could either be non-competition in one context or non-competition in another subject. There's a difference between the subject and the scope and the reach of the non-competition agreement. When you say subject, you're not talking purpose then? The subject is different than the purpose. The subject is non-competition. Which does the restatement care about? Well, first of all, there's an issue with respect to the restatement that we need to be clear about. The Maryville Land Partnership case made clear that the Missouri Court of Appeals considered whether the first restatement and the Williston application of integration clauses or whether the termination of the scope of an integration clause is a secondary statement. What test do we apply? The test is, what is the subject from the four corners of the agreement? And is the agreement fully integrated based on the four corners of that agreement? One agreement is a part of a purchase. You say, well, the purchase agreement's not in the record. The non-comp agreement was part of it, wasn't it? Both the employment agreement and the non-competition agreement reference the separate purchase agreement. Neither agreement pertains to the subject of a purchase. The consideration, the $1.8 million, was it consideration for the purchase? It was also consideration for the employment agreement, which references that they... Where do we go on the pleadings for that? The employment agreement itself states that the purchase agreement, that the employment agreement and Mr. McCabe's employment was contingent on the closing of the transaction and the purchase agreement. So both agreements arose from the... Of course, but all the shareholders were making covenants in the non-comp agreement. Correct. The covenants in the employment agreement were specific to one employee who happened to also be a shareholder. So we need to be clear that the provisions that were superseded by the non-competition agreement are the non-competition provisions in the employment agreement, not the entire agreement. And this is... You say that. What's that? Well, you say that, but where do we get the... How do we decide that on a 12B6 motion? So there's no dispute. The appellant did not object to the district court's consideration of the non-competition agreement under the Zine case that discusses contract documents that can be incorporated. Of course. That goes without saying. Almost. I mean, I agree with that. So it's the language of the non-competition agreement that matters with respect to this issue. A paragraph. Paragraph six of the non-competition agreement is the integration clause. That clause states that the non-competition agreement, adding obviously a word there, constitutes the entire agreement by and between the parties pertaining to the subject matter hereof. The face, as Missouri law would dictate, the face of the agreement determines the subject matter. The subject... Wait, wait, wait. That wasn't the point. That wasn't what I was questioning. Where do you get from that language, that bare language, the fact that the covenants in one agreement are the same subject? Excuse me. When one is an employment covenant by one employee, which obviously couldn't happen until the purchase had taken place, and therefore the non-comp agreement among all shareholders was in effect, I don't like those at all. They have different purposes. They're with different parties. They're in different agreements. And, you know, this is rule 12b-6. I just don't see it. So looking at the face of the non-competition agreement, that agreement covers... Mr. McKay may be prevented from competition. Those circumstances contemplated by the non-competition agreement include anticipate his employment with Corn Main, carving out that he may perform duties except on behalf of Corn Main in Section 2.1, and that provision covers both non-competition... What are you talking about, the language of 6, or are you just telling me what 6 means? No, I'm reading from Section 2. Right now I'm talking about Section 2.1 of the employment agreement. That provision is the non-competition restriction, the restrictions on competition. Those restrictions include non-competition, preventing competition by Mr. McKay as a shareholder or investor, but they also prevent competition by Mr. McKay as an employee of a competing business. If you look at Section 19 of the non-competition agreement, that relates to a different shareholder, but it carves out specific exceptions for that shareholder, contemplating whether that he would be employed by Corn Main and then to be accepted from that agreement. Now take it back to the restatement. You were talking about one version versus another version in Missouri cases. Correct. What standard do we apply from the restatement or elsewhere as to whether the integration clause covers this issue? Well, Missouri requires the court to review the four corners of the agreement and all of its provisions to determine the effect. Is there just that one case you cited? Well, there's several cases. The Rosenfeld case I think is the most important. The Maryville Land Partnership case and cases cited therein. I think the importance of the merger clause in Missouri and the emphasis placed on merger clauses by the Missouri Supreme Court is particularly important. So what is the subject of the non-competition agreement? Non-competition. The question and the issues raised by appellant relate to the scope of that agreement and whether it can be added to or supplemented. So not the subject, the subject the parties agree on. The question is the scope and the scope of the merger clause. It's important to note Section 6 of the non-competition agreement requires that not just any change to this agreement, but any supplement to this agreement. So an additional non-competition restriction, such as the employment agreement's non-competition restriction, are prohibited unless there is a new signed writing. It's also important to note that the merger clause doesn't just apply to final agreements. So whether the employment agreement, which was signed on October 2nd, sprang into life later and was simply a pre-agreement negotiation or understanding, that agreement was superseded by the merger clause, Section 9. So it's all a date of signing. It's the date of signing, but more importantly, it's the language of this agreement because the merger clause applied to both prior agreements, so obviously earlier date of signing, but also contemporaneous agreements, agreements that sprang to life around the same time period or as part of the same transaction. Council, why doesn't it make a difference that one agreement was signed in the role as a shareholder and one was signed in the role as an employee? Because that's not the subject of the agreement. The subject of the agreement is non-competition. The employment agreement obviously touched on broader subjects, so the only provisions that were superseded are those that touch on competition. The limitation to the non-competition agreement... Okay, what's your best case for that proposition? If the agreement is entitled non-competition agreement, then that's the subject, period. Well, I think it's not just the title, obviously. It's what are the provisions in that agreement? Because the non-competition agreement doesn't just... What's your best case for that? You can just brush aside Judge Graz's question. I didn't mean to brush aside. Why doesn't it matter the role of being played of the signing parties? Well, the role of the signing parties could be an important issue if it were reflected in the language of the agreement, but the language of the non-competition agreement is not limited to his role as a shareholder. As a matter of law. As a matter of the text of the agreement, which is a question of law for this court to interpret. So if the court reads through the agreement, it talks about... And if it's ambiguous? I would posit that it's not ambiguous. I know you would, but if it's ambiguous, then it should not have been... It should not have been disseminarily dismissed, right? Well, the question of ambiguity is a question for the court to decide, and so obviously if it was ambiguous and unclear... There was any question of ambiguity? I don't remember that it was addressed. I don't believe there was any, and the court properly found that as a matter of law the court could interpret the agreement. I think that Corn Main on appeal says, well, yes, there's all kinds of ambiguity, and your answer as I read your brief is, well, they didn't plead it that way. Well, there's two different issues there. One is what is the language of the non-competition agreement, which touches on both employment by Mr. McCabe, by Corn Main, and competition after that employment ends, and competition by other shareholders after the employment ends. So it doesn't just touch on their role as shareholders in owning businesses. It touches on their role as post-employment non-competition as well. So I think that's important. And as to the subject, the subject is clear. The subject deals with different aspects of non-competition between the parties. And so then, therefore, does that agreement allow for supplemental restrictions on that subject? No. Earlier understandings or agreements are extinguished by the integration clause, and supplemental agreements must, according to Section 6 of the non-competition agreement, must be new agreements signed by the parties. So the Missouri law places great weight on the integration clause, and I think that's very important. So the integration clause is not just a rule of evidence, according to the Missouri Supreme Court. It's a substantive rule, not merely a rule of evidence, and any extrinsic evidence must be ignored when the court finds a merger clause such as this one, and the court can find a subject of the agreement from the agreement's four corners. Which of those Missouri cases are a Supreme Court? That is the Rosenfeld Court quoting the Missouri Supreme Court in the Johnson-Eggswell-Johnson v. J.F. Enterprises decision quoted in the Rosenfeld decision. I think the Rosenfeld decision is particularly important because it dealt with a question of whether, after a bench trial, the court should have considered additional evidence. And the Missouri Court of Appeals said it was an error for the district court to do so at the bench trial because once the court read the merger clause and read the agreement and found its subject and that it was a completely integrated agreement, that was the end of the decision. The court should not have, and it was an error of law, to look at additional evidence. And so here, even if the court had looked at additional evidence for the subject... Ambiguity. I'm saying it's not, obviously, but even if the court had, the court must accept plaintiff's allegations as true on a Rule 12 motion. So the plaintiff's allegations, the complaint, pleaded the employment agreement as a non-competition agreement arising out of a business transaction. And so therefore, even if the court had looked at the complaint itself, accepting as pleaded what a plaintiff said at that time, the court must accept that as true and would end up with the same result. The issue of amending, with respect to amending their complaint, had they wanted to plead that differently when they received their motion, they had 21 days as a matter of right to amend their complaint. They didn't do so and elected not to do so, and so waived their opportunity to do that. And clearly, as argued by appellants, they see the employment agreement as a supplemental agreement to the non-compete, and that's foreclosed by Section 6. After the agreements on the same subject. So non-competition, whether that be in a context of a shareholder or as an employee, it is the same subject, non-competition between Mr. McCabe and Corn Main. Those were foreclosed by the integration clause. Had they wanted to enter into a new agreement, there would have to be a new separate supplemental agreement signed by the parties, according to Section 6 of the non-competition. What if the employment agreement had been with a Minnesota Pipe employee who was not a shareholder? He wouldn't have signed that. Presumably, he wouldn't have signed the non-competition agreement, but had he signed the agreement, it would have the same effect. We don't know the context of why they chose a different agreement, but the text of what they did agree to, the text of what they signed, superseded the employment agreement. It's clear from the Rosenfeld case that regardless of whether there's an agreement with consistent additional terms, that must be disregarded under Missouri's view of integration clauses. And that, more importantly, I think in this case, that an additional agreement or a supplemental agreement is prevented by the text of the non-competition agreement itself. Thank you, Your Honors. If you have any further questions, I'll step down. Mr. Erickson? Spring to life, I think, was the phrase that opposing counsel used. In this agreement, the employment agreement did not spring to life until after the conditions preceding were met, which was afterwards. So it goes exactly to the idea consistent with His Honor Judge Graza's point with regard to you can have two separate agreements. Specifically with regard to the issue of purpose and the issue with regard to separate agreements, we're wed to the facts. We are wed to the facts. We sold this company. The non-competition agreement was all directly as a result of the sale of the company. End of story, period. Mr. McCabe decided he wanted to continue on as an employee, and then we entered into an agreement, which he abided by. He even said in this litigation he was trying to comply with the agreement. He didn't decide after the fact. Pardon me? He'd already signed the employment agreement. Right, but he's indicated in this litigation that he was trying to comply with the agreement afterwards. Which agreement? The employment agreement. Okay, but you said that it wasn't until after the sales agreement that there would have been any reason for an employment agreement. The obvious answer is we signed it before. So it was part of the negotiating package. Correct. How many of the other investors who signed the non-competition agreement also signed employment agreements? At least one. I think I believe two. I guess you said that. Yeah, so I believe two others besides Mr. McCabe. Were they then employed? Yes. Do their employment agreements have non-covenants? I think we're outside the record with regard to that, but I believe the answer to that question is yes. Mr. Erickson, what's the answer on the count that was dismissed without prejudice? The answer with regard to that is my client is willing to dismiss that count with prejudice. Thank you. The only other thing I would mention is I didn't have a chance to deal with the breach of confidentiality issue. So let me just briefly say what that was about. On or about the end of May, first part of June, Mr. You're going beyond. I know. And this window wasn't opened by opposing counsel. Okay. All right. I would just say that we're moving for reversal of all of the charges. Excuse me. You preserved it in the briefs. Yeah, it's in the briefs with regard to that. And the breach of confidentiality is specifically argued in the briefs. I agree with your honors. Thank you. Thank you, counsel. Case has been thoroughly briefed and arguments have been helpful. And we will take it under advisement.